# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **MARVIN D. BILLUPS,** ) | **CASE NO. 8:08CV365** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| **BELLEVUE PUBLIC SCHOOLS a/k/a** ) | |
| **SCHOOL DISTRICT OF BELLEVUE IN** ) | |
| **SARPY COUNTY (NO. 77-0001 (BPS),** ) | |
| **RICHARD D. CASEY, DR. SHARRA** ) | |
| **SMITH, and DR. DOUGLAS TOWNSEND,** ) | |
| ) | |
| **Defendants.** ) | |

This matter is before the Court on the Defendants' Motion for Partial Summary Judgment (Filing No. 32). For the reasons stated below, Defendants Dr. Sharra Smith and Dr. Douglas Townsend will be granted qualified immunity from suit and will be dismissed as Defendants in this action. Plaintiff's claim of retaliation also will be dismissed as to Defendant Richard D. Casey. The Motion otherwise will be denied.

## FACTS[1]

Defendant Bellevue Public Schools ("BPS") is a political subdivision of the State of Nebraska, located in Bellevue, Nebraska. Plaintiff Marvin D. Billups, an African-American male, worked for BPS as a mechanic from approximately August 1999 until his termination on March 7, 2007. Billups was hired by Susan Friis, who served as the Supervisor of the BPS Transportation Department in 1999. She promoted Billups to "Head Mechanic," and he served in that capacity from August 2001 until his termination. During the time that Friis

---

[1]The parties' briefs (Filing Nos. 34, 40, and 46) and indexes of evidence (Filing Nos. 33, 41, and 45) demonstrate that the facts summarized in this section are not in dispute.

supervised Billups, he received satisfactory evaluations. Defendant Richard D. Casey replaced Friis as Supervisor of Transportation in 2004. During the time that Casey served as Supervisor of Transportation, Billups was the only African-American in the Transportation Department's maintenance section.

In late September 2006, Casey gave Billups a belated birthday card featuring a monkey holding balloons. Billups was offended by the card and considered it to be racially derogatory. On November 17, 2006, Casey issued a critical memorandum to Billups. Casey noted that Billups had been placed on "Minimum Standards of Performance" on February 6, 2006, and needed to improve his performance in areas of communication, plan implementation, and judgment. Also on November 17, 2006, Billups made a number of complaints to Casey about the conduct of a white mechanic, Bill Tibbles, who allegedly engaged in the same conduct for which Casey criticized Billups. Casey took no action against Tibbles. On November 28, 2006, Casey issued another memorandum to Billups regarding "Unsafe Maintenance Practices," including the discovery of a breaker bar in a bus engine compartment.

On or about November 28, 2006, Billups went to the BPS Personnel office to lodge a complaint about the birthday card. An employee in that office advised Billups to see Defendant Dr. Douglas Townsend, the Assistant Superintendent for BPS. Billups brought his complaint to Townsend's attention, and Townsend told Billups that he would look into the matter. On December 5, 2006, Townsend told Billups he could do nothing about it.

On December 5, 2006, Casey issued another memorandum to Billups, listing a variety of instances which Casey viewed as reflecting Billups's failure to complete assigned tasks and meet "Minimum Standards of Performance." On February 28, 2007, Casey

2

issued a letter to Billups describing another incident in which Billups allegedly left a tool in the engine compartment of a bus, among other criticisms of his job performance. The letter notified Billups that he would have an opportunity to be heard at a meeting on March 6, 2007, to determine his employment status. On March 7, 2007, following a meeting held the day before, Casey recommended that Billups's employment be terminated. Defendant Dr. Sharra Smith, the Director of Personnel, and Townsend concurred with the recommendation. Tibbles replaced Billups as Head Mechanic.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortgage & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A

"genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

> [S]ummary judgment should be used sparingly in the context of employment discrimination and/or retaliation cases where direct evidence of intent is often difficult or impossible to obtain. . . . [A]lthough Rule 56 contains only one standard, we must exercise *particular* caution when examining the factual question of intent to ensure that we dutifully extend all justifiable inferences in favor of the non-moving party. . . . Where reasonable fact finders could extend an inference in favor of the non-moving party without resorting to speculation, we may not declare the inference unjustifiable simply because we might draw a different inference.

*Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1117–18 (8th Cir. 2006) (citations omitted).

## DISCUSSION

Defendants Casey, Smith and Townsend, in their individual capacities, have moved for partial summary judgment, asserting qualified immunity from suit and noting that they cannot be held liable to Billups under 42 U.S.C. § 2000 *et seq.* ("Title VII"), because they were not his employer.

### *Qualified Immunity for § 1983 Liability*

Billups has sued Casey, Smith and Townsend under 42 U.S.C. § 1983, which provides, generally, that any person acting under color of law who causes another person to be subjected to a deprivation of any right secured by the Constitution or federal laws shall be liable to the injured party in a civil action. Billups has alleged that Casey, Smith, and Townsend, acting under color of law as supervisory personnel at BPS, violated his right to equal protection under the Fourteen Amendment of the United States Constitution.

Casey, Smith and Townsend have submitted affidavits in which they state that they did not treat Billups differently from any other employee due to his race or in retaliation for his protected actions; they did not knowingly violate any of his rights; and they terminated his employment due to his poor work performance. (Filing Nos. 33-2, 33-3, 33-4). They seek qualified immunity from suit in their individual capacities.

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L. Ed.2d 1068, (2004) (KENNEDY, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)(noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

*Pearson v. Callahan*, - S.Ct. -, 2009 WL 128768, at *6 (Jan. 21, 2009).

The two-step process described by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), is no longer mandated, following the

5

Supreme Court's decision in *Pearson,* but still may be helpful.  Under that two-step process, a court considers first whether a plaintiff alleged[2] or showed[3] facts making out a violation of a constitutional right, and second, whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

Billups asserts that the Defendants violated his constitutional right to equal protection of the law by subjecting him to discrimination on the basis of his race, and by retaliating against him for complaining about race discrimination.  A plaintiff can demonstrate unlawful discrimination through either direct or indirect evidence.  *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008).  Claims premised on indirect evidence are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Because Billups offers scant evidence of direct discrimination, the Court will analyze his claims under the *McDonnell Douglas* framework.

*Has Billups Presented a Prima Facie Case of Unconstitutional Race Discrimination?*

Billups bears the initial burden of proving a prima facie case of discrimination.  He must establish that: (1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged; and (4) his discharge occurred in circumstances giving rise to an inference of discrimination.  *Johnson v. AT & T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005).  If he establishes a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for their employment decision.  *Bearden,* 529 F.3d at 831.  If a Defendant

---

[2] With respect to a motion to dismiss for failure to state a claim.

[3] With respect to a motion for summary judgment.

articulates a nondiscriminatory reason, the burden returns to Billups to show that the proffered reason was pretextual.  *Id.* at 831-32 (citing *Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 548 (8th Cir. 2008)).

Construing the evidence in a light most favorable to Billups, he established the first three elements of his prima facie case.  If he also shows circumstances that give rise to an inference of discrimination, he has satisfied the first stage of the *McDonnell Douglas* analysis.  At the prima facie stage, Billups's burden to show circumstances that give rise to an inference of discrimination is "not onerous."  *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004) (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)).  He need only demonstrate that similarly situated employees were "'involved in or accused of the same or similar conduct and were disciplined in different ways.'"  *Wheeler*, 360 F.3d at 857 (quoting *Williams*, 14 F.3d at 1309); *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005).

Billups has established a prima facie case with respect to Casey, but not with respect to Smith and Townsend.  Evidence before the Court indicates that Smith and Townsend approved Billups's termination because Billups's supervisor, Casey, recommended termination and provided very detailed and substantial documentation of Billups's poor work performance.  Smith and Townsend had non-discriminatory reasons for their actions, and Billups has not shown that they treated similarly situated employees who were not African American differently than they treated him.  With respect to Casey, the burden shifts to him to articulate a legitimate, nondiscriminatory reason for the adverse actions he took against Billups.  *See, e.g., Carrington v. City of Des Moines*, 481 F.3d 1046, 1053 (8th Cir. 2007).

7

Casey has produced legitimate, nondiscriminatory reasons for the adverse actions he took against Billups, *i.e.*, documented deficiencies in his work performance.[4] The burden shifts back to Billups to demonstrate pretext. On this issue, Billups can avoid summary judgment "only if the evidence in its entirety (1) creates a fact issue as to whether the . . . proffered reasons are pretextual and (2) creates a reasonable inference that [race] was *a determinative factor* in the adverse employment decision." *Carrington*, 481 F.3d at 1053 (quoting *Cronquist v. City of Minneapolis*, 237 F.3d 920, 926 (8th Cir. 2001)). Billups bears the burden of demonstrating a genuine issue of fact as to whether Casey intentionally discriminated against him because of his race. *Thomas v. Runyon*, 108 F.3d 957, 960 (8th Cir. 1997).

In order to survive summary judgment, Billups must substantiate his allegations with more than "speculation, conjecture, or fantasy." *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). While Casey's reasons for recommending Billups's termination are detailed and well-documented, the evidence viewed in a light most favorable to Billups is sufficient to withstand summary judgment.

### *Has Billups Shown that He Suffered Unconstitutional Retaliation?*

Billups also alleges that the Defendants retaliated against him. To establish a retaliation claim, he must show (1) that he engaged in statutorily protected activity; (2) an

---

[4] Such documentation appears in Billups's Index of Evidence (*see* Filing No. 41-2, Ex. I, K, L, N, O, Q) and in the Defendants' Index of Evidence submitted with their Reply Brief (*see* Filing Nos. 45-2 and 45-3, Exs. A). Casey provided Billups detailed descriptions of work deficiencies and directions for improvement on August 22, 2005, August 26, 2005, November 11, 2005, January 13, 2006, February 6, 2006, November 17, 2006, November 28, 2006, and December 5, 2006.

adverse employment action was taken against him; and (3) a causal connection exists between the two events. *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005).

The evidence viewed in a light most favorable to Billups is insufficient to avoid summary judgment with respect to his claim of retaliation against Smith and Townsend, because the undisputed evidence demonstrates that they approved Billups's termination based on Casey's recommendation and the well-documented evidence of Billups's work deficiencies. The evidence viewed in a light most favorable to Billups is also insufficient to avoid summary judgment with respect to his claim of retaliation against Casey, because Billups has shown no evidence of a causal connection between his complaint about the birthday card and the adverse actions Casey took against him. Casey's documentation of the deficiencies in Billups's work performance began at least as early as August 22, 2005, with at least five detailed memoranda of such work deficiencies issued to Billups from Casey in the thirteen months preceding the delivery of the birthday card and Billups's complaint about it. Although Billups attempts to draw an inference that Casey was aware of Billups's complaint about the birthday card, Billups has produced no evidence to support that inference. The Court will not draw a causal connection to support an inference of retaliation without evidence.

### *Are the Defendants Entitled to Qualified Immunity?*

Because Billups has not demonstrated that Smith or Townsend subjected him to the deprivation of any right, they are entitled to qualified immunity from suit. Billups appears to suggest that any employee, reasonably relying on the actions or advice of another employee who allegedly is motivated by discriminatory animus, automatically takes on

9

liability under § 1983.  This Court finds no basis for such a liability-by-proxy theory.  At most, the actions of Smith and Townsend were mere mistakes of judgment, based on mistakes of fact, and Smith and Townsend are protected by qualified immunity. Billups also has failed to make a colorable claim against Casey for retaliation, and Casey is entitled to qualified immunity from suit on that claim.

With respect to his claim against Casey based on racial discrimination, however, Billups has met his burden of coming forward with facts, supported by his affidavit, that make out a colorable claim of a violation of a constitutional right.  Specifically, he has alleged that Casey took disciplinary action against him, including termination, based on conduct that a similarly situated white employee also engaged in without suffering any disciplinary action.  If a finder of fact concludes that Billups's allegations are credible, Billups may prevail on his claim against Casey based on a deprivation of rights secured by the Equal Protection Clause of the Fourteenth Amendment.  The rights which Billups claims to have been violated by Casey were clearly established at the time of the alleged violations, and Casey is not entitled to qualified immunity from suit.

### *Title VII*

Billups concedes that no direct claim lies against the individual Defendants under Title VII.  The Prayer for Relief in Plaintiff's Complaint makes clear the fact that Billups asserts no claims against the individual Defendants under Title VII.  (Filing No. 1, pp. 5-6). The individual Defendants' motion for summary judgment in their favor on Billups's Title VII claims is denied, because the Court will not grant summary judgment on claims that have not been asserted.

Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Partial Summary Judgment Regarding Qualified Immunity and Title VII Claims (Filing No. 32) is granted, in part, as follows:

    a. Defendants Dr. Sharra Smith and Dr. Douglas Townsend have qualified immunity from suit with respect to all claims against them in the Complaint;

    b. The Complaint is dismissed as to Defendants Dr. Sharra Smith and Dr. Douglas Townsend;

    c. The Clerk will modify the caption to remove the names of Defendants Sharra Smith and Douglas Townsend;

    d. Defendant Richard Casey has qualified immunity from suit with respect to Plaintiff's Fourth Cause of Action alleging unlawful retaliation;

    e. The Plaintiff's Fourth Cause of Action is dismissed; and

2. The Motion is otherwise denied.

DATED this 12th day of March, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge